IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| **KELLER NORTH AMERICA, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: _____ |
| ) | |
| **MATTHEW HAMMETT,** ) | **JURY DEMAND** |
| ) | |
| Defendant. ) | |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff, Keller North America, Inc. ("Keller"), by and through counsel, for its Verified Complaint for Injunctive Relief and Damages against Defendant, Matthew Hammett ("Hammett"), states and alleges as follows:

**NATURE OF THIS ACTION**

1. Keller is a geotechnical specialist contractor that works with its clients to address their geotechnical challenges across the United States and worldwide. To that end, Keller maintains a team of highly trained engineers, project managers, and business developers who have a wealth of experience and provide a wide range of geotechnical techniques and optimum solutions to clients.

2. Hammett was formerly employed by Keller and worked for the company for nearly fifteen years, most recently in a key business development role based out of Knoxville, Tennessee. As a result of his high-level role with Keller, Hammett had access to Keller's confidential and proprietary information relating to Keller's business plans, strategies, operations, productivity, customers, and financial performance and projections, and he was positioned to divert other

1

members of Keller's workforce, along with Keller's intellectual property and business relationships, away from the company.

3. Hammett unexpectedly resigned from Keller and, despite being bound by a contract with Keller that included non-competition, customer non-solicitation, and employee non-solicitation provisions, Hammett went to work for Keller's director competitor, Berkel & Company Contractors, Inc. ("Berkel"), in the same market area doing the same or substantially similar job for Berkel as he did for Keller.

4. Not only is Hammett working for a competing company in violation of his non-compete obligations, but he is also soliciting current Keller employees in an attempt to persuade them to leave their employment with Keller to work for Berkel.

5. Consequently, Keller brings this action to enjoin Hammett from violating his contractual obligations to Keller and for other damages and relief.

**PARTIES, JURISDICTION, AND VENUE**

6. Keller is a corporation organized under the laws of the state of Delaware, with its principal place of business located at 7550 Teague Road, Suite 300, Hanover, Maryland 21076, and, is therefore, a citizen of the states of Delaware and Maryland.

7. Hammett is an individual residing and domiciled at 1134 Greenfield Drive, Maryville, Tennessee, and, is therefore, a citizen of the state of Tennessee.

8. This Court has personal jurisdiction over Hammett because Hammett resides within this District, and he violated the terms of his contract with Keller in this District. Hammett is further subject to personal jurisdiction because the contract which is the subject of this litigation was entered into in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to these causes of action occurred in the Eastern District of Tennessee and Hammett resides within that District.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

## FACTUAL BACKGROUND

### KELLER'S BUSINESS OPERATIONS

11. Keller is a geotechnical specialist contractor that provides solutions to geotechnical challenges throughout the construction industry, including across commercial, institutional, mining, infrastructure, and other markets.

12. Among other areas, Keller operates in the deep foundation construction, earth retention, and ground improvement spaces providing its design-build services, products, and solutions to customers across the country and worldwide.

13. Keller's deep foundation services, which are required whenever weak soils have little capacity to resist an existing load or a change in an existing load and involve the construction of structural elements to transfer loads down to stronger underlying soils or rock, include (among other techniques) auger cast piles, bored piles/drilled shafts, driven cast in-situ piles, driven precast piles, screw piles, macropiles, and micropiles.

14. Keller's earth retention services, which are used to retain earth successfully so that it does not move or shift to any unwanted directions, include (among other techniques) anchors, contiguous pile walls, micropile slide stabilization systems, secant pile walls, and sheet piles.

15. Keller also provides ground improvement services, which can increase the load bearing capacity of the ground, reduce settlement, and improve the engineering properties of

existing soils through, among other techniques, rigid inclusions, compaction grouting, pressure grouting, and deep soil mixing.

16. Among other locations, Keller has operations in Tennessee.

**H**AMMETT'S **E**MPLOYMENT WITH **K**ELLER

17. Matthew Hammett was hired by Hayward Baker, Inc., a Keller Company, in or around May 2005 as a Field Manager.

18. During his tenure with Keller, Hammett held various positions with the Company.

19. On or about November 27, 2017, in consideration of a promotion, his continued employment, the provision of Confidential Information to him, and the Company's investment of time, effort, and money in building relationships with customers, referral sources, and suppliers, Hammett entered into an Agreement with Keller (the "Agreement"). A true and accurate copy of the Agreement is attached hereto and incorporated herein as **Exhibit 1**.

20. The Agreement contains a non-competition covenant, providing, in relevant part, that for a one-year period after his separation from Keller:

> You will refrain from employment on behalf of any company that is involved in the provision of services equivalent or similar to Geotechnical Construction using *Dry Soil Mixing, Vibro Replacement, Vibro Compaction, Vibro Piers, Rigid Inclusions, Driven Piles, Helical Piles, Jacks Piers, Macropiles, Micropiles, Pit Underpinning, Anchors, Sheet Piles, Soil Nailing, Soldier Piers and Lagging techniques* within the State of Tennessee. . . .

Ex. 1, Agreement, p. 2, ¶A.b.

21. The Agreement also contains restrictions on non-solicitation of customers and employees, among other provisions. Ex. 1, Agreement, p. 2, ¶A.a.

22. In particular, Hammett agreed that for a one-year period after his separation from Keller:

> [He] will refrain from (1) contacting, soliciting any of the current or former customers of the Company or (2) soliciting any of the employees of the Company, who at the time of separation from service are employees of the Company, or who served in such capacity within the six-month period prior to [his] separation from service.

*Id*.

23. Hammett was promoted into progressively higher positions with Keller, ultimately being named as Business Development Executive based out of Knoxville, Tennessee.

24. During his employment with Keller, Hammett had responsibility for, among other things, developing client relationships; managing strategy for closing proposals, analyzing risks, and setting pricing; developing sales strategies; estimating and proposal preparation, ensuring project teams are fulfilling their responsibilities for project management through initial planning, risk management, project execution, change management, and financial management; and developing and driving strategy for successful project execution and maximizing profitability.

**COMPETING COMPANY BERKEL'S BUSINESS OPERATIONS**

25. Berkel is a specialty geotechnical contractor in the deep foundation construction, earth retention, and ground improvement arenas that provides geotechnical construction and specialized foundation and construction services to its clients across the country and in the Caribbean.

26. The company touts itself as being "one of the largest piling contractors in the U.S." and as "the most experienced designer and installer of single-pass, cast-in-place foundation systems in the U.S."

27. According to Berkel's website, the company provides deep foundation work, including auger pressure grouted piles, infinity group piles, drilled displacement/screw piles, limited/remote access, micropiles, energy piles, drilled shafts, driven piles, and rock anchors/tie-downs.

28. According to Berkel's website, Berkel also provides sheeting and shoring, including sheet piles, soldier piles, tie-backs, underpinning, bracing, secant and tangent walls, soil nails, and façade retention, as well as ground improvement work, such as rigid inclusions, compaction grouting, pressure grouting, and deep soil mixing.

29. Berkel provides services similar to geotechnical construction using dry soil mixing, vibro replacement, vibro compaction, vibro piers, rigid inclusions, driven piles, helical piles, jacks piers, macropiles, micropiles, pit underpinning, anchors, sheet piles, soil nailing, soldier piers, and/or lagging techniques.

30. Berkel's engineering group, which includes structural and geotechnical engineers, offers design assistance, as well as full designs on the company's products and services.

31. Berkel operates and/or maintains projects in many locations, including in Tennessee.

32. Berkel provides services equivalent or similar to those that Keller provides and is a direct competitor of Keller.

## HAMMETT'S RESIGNATION AND POST-RESIGNATION ACTIVITIES

33. In or around August 16, 2024, Hammett resigned his position with Keller to accept a position as the Preconstruction Director – Ground Improvement with Berkel.

34. Hammett works for Berkel in Tennessee.

35. On August 26, 2024, Keller sent Hammett a letter reminding him of his post-employment contractual obligations to Keller and advising that he was in direct violation of those obligations through his employment with Berkel. A true and accurate copy of the August 26 letter is attached hereto and incorporated herein as **Exhibit 2**.

36. The letter also provided Hammett with a copy of his Agreement and advised him to review its terms and refrain from beaching those terms. *See* Exhibit 2.

37. Hammett continues to be employed by Berkel in direct violation of the non-competition covenant in his Agreement.

38. In October 2024, Hammett contacted a current Keller employee by telephone.

39. Hammett told the current Keller employee that he should speak to Michael Terry, another former Keller employee who now serves as the Executive Vice President for Berkel, about employment.

40. Hammett's call to the current Keller employee was an effort to solicit the Keller employee to leave his employment with Keller and take a job with Berkel.

## COUNT ONE: BREACH OF CONTRACT

41. Keller repeats and incorporates by reference each of the allegations set forth in the prior paragraphs as if fully set forth herein.

42. The Agreement is a valid and enforceable contract.

43. Hammett received adequate consideration for the Agreement and the restrictive covenants contained therein, including a promotion, his continued employment with Keller, the provision of Confidential Information to him, and the Company's investment of time, effort, and money in building relationships with customers, referral sources, and suppliers.

44. Keller has fully performed its obligations under the Agreement.

45. By accepting employment with and working for Berkel in the state of Tennessee less than one year after his employment with Keller ended, Hammett has breached the Agreement.

46. By soliciting and/or recruiting at least one current Keller employee to leave their employment with Keller and defect to Berkel, Hammett has breached the Agreement.

47. As a direct and proximate result of Hammett's actions in breach of the Agreement, Keller has and will sustain damages.

48. Although the full extent of Hammett's actions and the damages caused thereby are presently unknown and irreparable, Hammett's breach of the Agreement has caused and will continue to cause damages to Keller, including without limitation: loss of employees, jeopardy to and/or loss of Keller's existing and future business relationships and contacts with its customers, loss of customer confidence, loss of goodwill, loss of confidential business information, loss of referral sources, damage to or loss of Keller's reputation, and loss of competitive advantage, all of which exceeds the monetary value of $75,000, exclusive of interest and costs.

49. Keller is therefore entitled to a judgment against Hammett awarding damages in an amount to be determined at trial; granting a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Hammett from competing against Keller in violation of his Agreement for a period of one year from the date on which injunctive relief is first entered; and awarding such further relief as the Court deems just and proper.

**REQUEST FOR RELIEF**

WHEREFORE, Keller demands and prays for relief against Matthew Hammett as follows:

(a) temporary, preliminary, and permanent injunctive relief providing:

    (i) for a period of one year following the date injunctive relief is first granted, Defendant shall be enjoined from working for Berkel in violation of his Agreement;

    (ii) for a period of one year following the date injunctive relief is first granted, Defendant shall be prohibited from contacting, soliciting any of the current or former customers of the Company;

    (iii) for a period of one year following the date injunctive relief is first granted, Defendant shall be prohibited from soliciting any of the employees of the Company, who at the time of separation from service are employees of the Company, or who served in such capacity within the six-month period prior to his separation from service; and

(iv) Defendant shall be prohibited from directly or indirectly making use of confidential, proprietary, trade secret information belonging to Keller.

(b) that Keller be relieved of any obligation to post an injunction bond;

(c) actual, compensatory, and punitive damages in an amount to be proven at trial;

(d) an award of reasonable attorneys' fees and costs incurred in this action;

(e) pre- and post-judgment interest at the maximum rate permitted by law; and

(f) such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury as to all claims asserted herein.

Respectfully submitted on this, the 24th day of October, 2024.

/s/ Joseph P. Shelton
Joseph P. Shelton (TN Bar No. 037426)
**FISHER & PHILLIPS LLP**
424 Church Street, Suite 1700
Nashville, TN 37219
Telephone: (615) 488-2900
Facsimile: (615) 488-2928
Email: jshelton@fisherphillips.com

*Counsel for Plaintiff*

## VERIFICATION

I declare and verify under penalty of perjury under the laws of the United States of America and the State of MO that the foregoing is true and correct.

Executed on: 10/23/24

By: Curtis Cook

Title: Executive Vice President